APPELLANTS *PRO SE*
Kathy L. Siner
John T. Siner
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
KINDRED HOSPITAL, DENNIS
NICELY, AND DAVID UHRIN
Melinda R. Shapiro
Libby Y. Goodknight
Lauren C. Sorrell
Krieg DeVault LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
MOHAMMED MAJID
Michael Roth
Brett T. Clayton
Eichhorn & Eichhorn, LLP
Indianapolis, Indiana

# In the
# Indiana Supreme Court



FILED

Apr 28 2016, 12:14 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

No. 49S05-1604-CT-219

KATHY L. SINER, PERSONAL REPRESENTATIVE OF THE ESTATE OF
GERALDINE A. SINER, DECEASED, AND JOHN T. SINER, PRIOR
ENDURING POWER OF ATTORNEY AND MEDICAL
REPRESENTATIVE OF THE DECEASED,                        *Appellants-Plaintiffs*,

v.

KINDRED HOSPITAL LIMITED PARTNERSHIP, D/B/A
KINDRED HOSPITAL OF INDIANAPOLIS, ET AL.,
MOHAMMED A. MAJID, M.D., DENNIS NICELY,
DAVID UHRIN, R.N.,                                     *Appellees-Defendants*.

Appeal from the Marion Superior Court 12, No. 49D12-1305-CT-20123
The Honorable Heather Welch, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A05-1404-CT-165

**April 28, 2016**

**Rush, Chief Justice.**

To obtain summary judgment in Indiana, a moving party must demonstrate the absence of any genuine issue of material fact on at least one element of the opposing party's claim. Conflicting affidavits regarding an element of a claim cannot satisfy this burden because they create a disputed factual issue that must be resolved at trial.

In this medical malpractice case, the defendants' *own* designated evidence revealed conflicting medical opinions on the element of causation. Because these conflicting opinions create a genuine issue of material fact, summary judgment is inappropriate and would deny the plaintiffs their rightful day in court. Accordingly, we reverse the trial court's grant of summary judgment to the defendants.

### Facts and Procedural History

Eighty-three-year-old Geraldine Siner, who had advanced dementia, was admitted to Kindred Hospital in October 2007 for treatment of aspiration pneumonia. She was unable to make her own medical decisions during her stay, but her son John Siner was her designated health care representative and had been appointed power of attorney in 1996.

Both John and his sister Kathy Siner consistently instructed the care providers, including the attending physician Dr. Mohammed Majid, to classify their mother as "full code" so she would receive all life-sustaining therapies in the event of cardiac or pulmonary arrest. But Kindred Hospital's Ethics Committee reviewed the family's decision, noting that Geraldine Siner's condition was unlikely to improve, that "[t]he greatest benefit with least burden [was] to make the patient a no code," and that the family had "unrealistic expectations and strong religious beliefs." The Ethics Committee ultimately overruled the "full code" decision in mid-November—acknowledging "[l]egal concerns with changing code status despite family opposition"—and changed Geraldine Siner's classification to "no code," so that she would not receive any life-sustaining therapies.

After Kathy Siner was told that "she needed to find another hospital and doctor" if she wanted her mother to remain "full code," John and Kathy Siner arranged for a transfer to Methodist Hospital. When Geraldine Siner arrived at Methodist Hospital on December 8, 2007,

2

she required immediate treatment for a collapsed lung and was suffering from wounds on her cheeks, overwhelming infection, and septic shock. She died twenty days later.

In November 2009, Kathy Siner filed a medical malpractice complaint with the Indiana Department of Insurance against Kindred Hospital and several of its employees (collectively, "Kindred") and Dr. Majid. A medical review panel issued a unanimous opinion "that the evidence supports the conclusion that the defendants failed to comply with the appropriate standard of care, and that their conduct may have been a factor of some resultant damages, but not the death of the patient." John and Kathy Siner then filed this medical malpractice suit *pro se*, alleging that the defendants "failed to comply with the appropriate standard of care under the circumstances, proximately resulting in injuries and damages of a nature requiring compensation."

Kindred and Dr. Majid separately moved for summary judgment. Each designated as evidence the medical review panel's opinion, as well as affidavits from Dr. James Krueger—one of the members of the panel—saying that in his opinion Kindred and Dr. Majid "did not cause injury to Ms. Siner" in administering her pulmonary care.[1] Kindred and Dr. Majid argued that Dr. Krueger's affidavits shifted the burden to the Siners to show a genuine issue of material fact regarding causation and that the medical review panel's opinion could not satisfy that burden because it was too speculative to provide affirmative evidence of proximate cause.

The Siners responded to both motions for summary judgment. They designated affidavits regarding Geraldine Siner's care from two additional doctors—Dr. Lawrence Reed II and Dr. Timothy Pohlman—in their response to Kindred's motion, but not to Dr. Majid's motion. The trial court granted Dr. Majid's motion for summary judgment because the Siners had not designated any expert testimony on the causation element. The court likewise granted Kindred's motion for summary judgment, determining that because Dr. Reed's and Dr. Pohlman's affidavits did not address the issue of causation, the Siners failed to show a genuine issue of material fact on that element of their medical malpractice claims. The Siners appealed the grants of summary judgment as *pro se* appellants, and the Court of Appeals affirmed in part and

---

[1] Kindred and Dr. Majid submitted separate affidavits from Dr. Krueger. They contain the same information and conclusions but are tailored for each defendant.

reversed in part in a divided opinion. <u>Siner v. Kindred Hosp. Ltd. P'ship</u>, 33 N.E.3d 377 (Ind. Ct. App. 2015).

The Court of Appeals panel unanimously reversed summary judgment for Kindred after determining that Dr. Pohlman's affidavit did, in fact, create a genuine issue of fact on proximate cause. <u>Id.</u> at 384 (majority opinion); <u>Siner</u>, 33 N.E.3d at 386 (Kirsch, J., dissenting). The majority, however, affirmed summary judgment for Dr. Majid because the Siners did not designate Dr. Pohlman's affidavit as evidence when responding to Dr. Majid's motion. <u>Siner</u>, 33 N.E.3d at 385 (majority opinion). The majority also noted that the medical review panel's opinion—that the defendants' "conduct may have been a factor of some resultant damages"— was too speculative regarding causation to support a verdict and thus could not create a genuine issue of material fact for summary judgment. <u>Id.</u> Judge Kirsch dissented from the majority's decision regarding Dr. Majid, arguing that even if one member of a medical review panel could later undermine the panel's previous unanimous opinion, the contradiction creates a genuine issue of material fact. <u>Id.</u> at 386 (Kirsch, J., dissenting).

The Siners petitioned for transfer, which we now grant, vacating the Court of Appeals decision. Ind. Appellate Rule 58(A). For the reasons explained below, we reverse the trial court's grants of summary judgment to Kindred and Dr. Majid.[2]

## Standard of Review

Our summary judgment standard of review is well settled. We draw all reasonable inferences in favor of the non-moving party and affirm summary judgment only "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C); <u>see also, e.g.</u>, <u>Hughley v. State</u>, 15 N.E.3d 1000, 1003 (Ind. 2014). And we "give careful scrutiny to assure that the losing party is not improperly prevented from having its day in court." <u>Tankersley v. Parkview Hosp., Inc.</u>, 791 N.E.2d 201, 203 (Ind. 2003) (citing <u>Landmark Health Care Assocs. L.P. v. Bradbury</u>, 671 N.E.2d 113, 116 (Ind. 1996)).

---

[2] Dr. Majid has moved to strike portions of the Siners' petition to transfer, arguing that it raises a *res ipsa loquitur* issue for the first time and alleges facts unsupported by the record. Because those portions of the petition to transfer are irrelevant to this decision, we deny the motion—and the Siners' related motions—as moot.

4

To that end, Indiana's distinctive summary judgment standard imposes a heavy factual burden on the movant to demonstrate the absence of any genuine issue of material fact on at least one element of the claim. Hughley, 15 N.E.3d at 1003. For a medical malpractice claim, those elements are "(1) that the physician owed a duty to the plaintiff; (2) that the physician breached that duty; and (3) that the breach proximately caused the plaintiff's injuries." Mayhue v. Sparkman, 653 N.E.2d 1384, 1386 (Ind. 1995). A "unanimous opinion of the medical review panel" in favor of the movant is "ordinarily sufficient" to meet this initial burden, requiring the non-movant to rebut the medical panel opinion with expert medical testimony. Stafford v. Szymanowski, 31 N.E.3d 959, 961 (Ind. 2015). But cases hinging on disputed material facts are by definition inappropriate for summary judgment, because weighing evidence is "a matter for trial, not summary judgment." Hughley, 15 N.E.3d at 1005–06; In re Ind. State Fair Litig., No. 49S02-1601-CT-51, 2016 WL 348155, at *2 (Ind. Jan. 28, 2016).

**Discussion and Decision**

Kindred and Dr. Majid, as the summary judgment movants, had the initial burden to demonstrate the absence of any genuine issue of material fact on at least one element of the Siners' medical malpractice claims. See Manley v. Sherer, 992 N.E.2d 670, 673 (Ind. 2013). Establishing this prima facie case is typically "only the beginning of the story," but here Kindred and Dr. Majid failed to carry even this initial burden, making summary judgment inappropriate. Hughley, 15 N.E.3d at 1004.

## I. Defendants Must Affirmatively Negate the Plaintiffs' Claims in Order to Merit Summary Judgment.

Because Kindred and Dr. Majid moved for summary judgment, they bear the burden of "affirmatively negating" at least one element of the Siners' claims. Schmidt v. Ind. Ins. Co., 45 N.E.3d 781, 785 (Ind. 2015). They argue that Dr. Krueger's affidavits satisfy that burden by demonstrating that Kindred and Dr. Majid did not cause injury to Geraldine Siner. But Dr. Krueger's affidavits do not address all of the Siners' claims.

In their complaint, the Siners allege malpractice "on multiple acts or occurrences," resulting in "multiple injuries to [Geraldine Siner's] nervous system, respiratory system, cardiovascular system, [and] musculoskeletal system"; medical bills; and several other harms

and losses. Dr. Krueger's affidavits, however, are limited to Geraldine Siner's pulmonary care, so they could support summary judgment on only that aspect of her medical care.

Specifically, in his affidavits, Dr. Krueger says that his agreement with the medical review panel opinion "was based solely on prolonged application of a CPAP[3] mask to the patient." He further notes that Indiana University's Pulmonary and Critical Care Service directed the CPAP use, that its decisions were reasonable under the circumstances, and that Kindred and Dr. Majid appropriately consulted with and deferred to the Service. Dr. Krueger concluded his affidavits by emphasizing that Kindred and Dr. Majid "met the standard of care and did not cause any injury to Geraldine Siner in regard to the issue of CPAP application." Throughout the affidavits, Dr. Krueger does not give any opinion about the remainder of Geraldine Siner's care.

We make summary judgment determinations "from the evidentiary matter designated to the court." T.R. 56(C); see also Manley, 992 N.E.2d at 673 ("An appellate court reviewing a challenged trial court summary judgment ruling is limited to the designated evidence before the trial court . . . ."). Here, Kindred and Dr. Majid designated the medical review panel's opinion—which favored the Siners; affidavits from Dr. Krueger; and an additional affidavit from Kristy Walden, the CEO of Kindred Hospital, which likewise does not relate to any of the Siners' non-pulmonary claims.[4] Because the evidence designated here can affirmatively negate only the claims related to pulmonary care, summary judgment on the Siners' non-pulmonary claims is inappropriate.

## II. Conflicting Evidence on a Material Issue Precludes a Prima Facie Case for Summary Judgment.

Dr. Krueger's affidavits provide evidence on Geraldine Siner's pulmonary care and would be sufficient, standing alone, to shift the burden to the Siners on those claims. The affidavits do not, however, stand alone—Kindred and Dr. Majid also designated as evidence the

---

[3] "CPAP, or continuous positive airway pressure, is a treatment that uses mild air pressure to keep the airways open." Nat'l Heart, Lung, & Blood Inst., U.S. Dep't of Health & Human Servs., *What is CPAP?,* http://www.nhlbi.nih.gov/health/health-topics/topics/cpap (last updated December 13, 2011).

[4] Kristy Walden testified in her affidavit that an independently contracted pulmonology service—and not Kindred employees—oversaw Geraldine Siner's pulmonary care.

medical review panel's opinion that the defendants' "conduct may have been a factor of some resultant damages, but not the death of the patient."

Drawing all reasonable inferences in favor of the non-moving party, as we must, we find that the medical review panel's opinion conflicts with Dr. Krueger's affidavits on the pulmonary claims. Kindred's and Dr. Majid's *own* designated evidence establishes a genuine issue of material fact on the element of causation, preventing them from affirmatively negating the Siners' claims, as Indiana summary judgment practice requires. Hughley, 15 N.E.3d at 1003 ("[W]hile federal practice permits the moving party to merely show that the party carrying the burden of proof *lacks* evidence on a necessary element, we impose a more onerous burden: to affirmatively 'negate an opponent's claim.'" (quoting Jarboe v. Landmark Cmty. Newspapers of Ind., Inc., 644 N.E.2d 118, 123 (Ind. 1994))). Summary judgment, then, is inappropriate on all of the Siners' claims.

Kindred and Dr. Majid argue—and the Court of Appeals majority agreed—that the medical review panel's opinion is too speculative to create a genuine issue of fact. But their argument relies on cases where expert testimony was insufficient to support a *verdict*. See Palace Bar, Inc. v. Fearnot, 269 Ind. 405, 409, 381 N.E.2d 858, 861 (1978); Topp v. Leffers, 838 N.E.2d 1027, 1036 (Ind. Ct. App. 2005), trans. denied; City of E. Chi. v. Litera, 692 N.E.2d 898, 901–02 (Ind. Ct. App. 1998), trans. denied. These cases, however, are not on point: summary judgment is inappropriate whenever "a conflict of evidence *may* exist" on a material issue. Purcell v. Old Nat. Bank, 972 N.E.2d 835, 841 (Ind. 2012) (emphasis added). Evidence sufficient to support a verdict is not required.

Although Dr. Krueger unequivocally stated that Kindred and Dr. Majid "did not cause any injury to Ms. Siner in regard to the issue of CPAP application," the medical review panel's opinion was that the defendants' "conduct may have been a factor of some resultant damages." This disagreement on the ultimate issue of causation demonstrates that a conflict of evidence may exist, even before "resolv[ing] all doubts against the moving party." Estate of Mintz v.

7

Conn. Gen. Life Ins. Co., 905 N.E.2d 994, 998 (Ind. 2009) (citing Atl. Coast Airlines v. Cook, 857 N.E.2d 989, 994–95 (Ind. 2009)).[5]

Moreover, in medical malpractice cases, expert opinions which conflict on ultimate issues necessarily defeat summary judgment. Chi Yun Ho v. Frye, 880 N.E.2d 1192, 1200–01 (Ind. 2008) (affirming a denial of summary judgment when an affidavit "challenge[d] the medical review panel's finding of medical negligence" but did "not provide any facts describing the specific actions taken" by the defendant). While the medical review panel's opinion here contains no specific facts, its medical conclusions do create a genuine issue of fact. Any lack of detail "goes to the weight and credibility to be assigned to [the opinion], not to whether it is adequate to create a question of fact." Jordan v. Deery, 609 N.E.2d 1104, 1106, 1111 (Ind. 1993) (finding that a doctor's affidavit with "no discernible facts" demonstrated "the existence of a material fact" when it concluded that the defendants violated the standard of care, causing injuries).

"[S]ummary judgment 'is not a summary trial.'" Hughley, 15 N.E.3d at 1003–04 (quoting Ayres v. Indian Heights Volunteer Fire Dep't, Inc., 493 N.E.2d 1229, 1234 (Ind. 1986)). And, so, defeating summary judgment requires only a genuine issue of material fact, not necessarily a persuasive issue of material fact. Id. at 1004–05. A trier of fact must decide whether the Siners' evidence is persuasive, and we must leave that determination in its capable hands.

## Conclusion

In this medical malpractice case, we find that Kindred and Dr. Majid did not affirmatively negate the Siners' claims as required to merit summary judgment. Rather, Kindred and Dr. Majid themselves created a genuine issue of material fact by designating for summary judgment Dr. Krueger's affidavits and the conflicting medical review panel's opinion. Because their designated evidence shows that a conflict of evidence may exist on the element of causation, summary judgment for Kindred and Dr. Majid is inappropriate. The conflicting evidence must be

---

[5] Kindred and Dr. Majid rely on two Court of Appeals cases in arguing that the medical review panel's opinion is insufficient to overcome summary judgment. See Clarian Health Partners, Inc. v. Wagler, 925 N.E.2d 388 (Ind. Ct. App. 2010), trans. denied; Malooley v. McIntyre, 597 N.E.2d 314 (Ind. Ct. App. 1992). We disapprove of these decisions to the extent they conflict with this opinion.

resolved by a trier of fact, and we therefore reverse the trial court's grants of summary judgment to Kindred and Dr. Majid.

Dickson, Rucker, David, and Massa, JJ., concur.